# Exhibit 1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| SUNETA SOWEMIMO<br>15231 Colony Place Apt. 305<br>Woodbridge, VA 22191<br><br>    Plaintiff,<br><br>    v.<br><br>TWD & ASSOCIATES, INC.<br><br>    SERVE:  Business Filings, Inc.<br>                  1015 15th St., NW<br>                  #1000<br>                  Washington, DC 20005<br><br>    Defendant. | Case No. _____<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

Suneta Sowemimo ("Plaintiff" or "Ms. Sowemimo") by and through counsel, submits this Complaint against TWD & Associates, Inc. ("TWD" or "Defendant") to recover compensatory damages, liquidated damages, punitive damages, attorneys' fees, and costs for Defendant's violations of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 42 U.S.C. §12101 *et seq.* ("ADA").

## PARTIES, RELEVANT NON-PARTIES, AND JURISDICTION

1. Ms. Sowemimo was employed by TWD from April 2015 to September 2015, supporting NAVSEA, a government client.

2. TWD is a computer consulting company that operates an office in the District of Columbia.

1

3. Steve Eswick is TWD's Vice President, National Security and Department of Defense Sector.

4. William Douglas was, at all relevant times, a Deputy Program Manager for TWD.

5. Ms. Sowemimo worked out of TWD's District of Columbia office.

6. As a result, Defendant is subject to personal jurisdiction in the District of Columbia.

## FACTS AND ALLEGATIONS

7. Prior to Ms. Sowemimo's employment with TWD, she worked for Epsilon, a subcontractor supporting TWD, the prime on the NAVSEA contract.

8. Ms. Sowemimo worked for Epsilon as an Information Technology ("IT") portfolio manager.

9. Ms. Sowemimo gained employment with TWD in part based on the strength of her work supporting it when she worked for Epsilon.

10. TWD hired Ms. Sowemimo as a project manager supporting the NAVSEA contract.

11. Ms. Sowemimo's annual salary was $105,000.

12. Douglas was Ms. Sowemimo's TWD supervisor.

13. Eswick was Ms. Sowemimo's second-level TWD supervisor.

14. On the client side, Ms. Sowemimo reported to Rosetta Little and Kenneth Broadbent, both government project managers.

15. From April 2015 to June 2015, Ms. Sowemimo performed project manager and IT portfolio manager duties, as TWD was short-staffed.

16. Ms. Sowemimo was a high-performing employee, receiving consistent praise from her supervisors — including Eswick and Douglas — and the government client.

17. In or around June 2015, Ms. Sowemimo's health problems began.

18. In or around June 2015, Ms. Sowemimo lost consciousness at work.

19. In the hospital, Ms. Sowemimo learned that her health problems were not the result of high cholesterol, as she had initially thought, but instead the result of heart palpitations.

20. Ms. Sowemimo informed TWD of her diagnosis.

21. Ms. Sowemimo visited doctors to develop a treatment plan throughout summer 2015.

22. Ms. Sowemimo's diagnosis led her to change her lifestyle substantially.

23. Ms. Sowemimo's condition made it difficult for her to breathe and walk. In order to avoid exacerbating her symptoms, she would often sit at her desk and avoid moving.

24. Ms. Sowemimo quit smoking as soon as she received her diagnosis.

25. As a result of her diagnosis, Ms. Sowemimo began wearing a heart monitor to work.

26. Her heart monitor was conspicuous, worn over her clothes, and visible to every individual she encountered at work.

27. In or around July 2015, Ms. Little noticed the heart monitor and asked Ms. Sowemimo about her condition.

28. When Ms. Sowemimo explained that she suffered from heart palpitations, Ms. Little suggested that she take time off and go on disability.

29. Ms. Sowemimo did not go on disability.

30. In or around mid-July 2015, Ms. Sowemimo got to work and discovered that Andrea Coulson was working out of her office, and her belongings and equipment had been piled in the corner of the office.

31. On information and belief, once Ms. Coulson took over the position, she began spreading rumors that Ms. Sowemimo was going to leave on disability.

32. On information and belief, Eswick and Douglas heard those rumors that Ms. Sowemimo was going to take disability leave.

33. During this time period, Ms. Sowemimo learned that TWD had instructed Ms. Sowemimo's coworkers and the employees whom she supervised to stop talking and listening to her.

34. On information and belief, Eswick and Douglas were the individuals that instructed other TWD employees not to talk or listen to Ms. Sowemimo.

35. On July 31, 2015, her doctor sent TWD a letter indicating that she needed time off for surgery, followed by a stint of light duty.

36. Ms. Sowemimo needed an urgent cardiac catheterization, a surgical procedure.

37. On July 31, 2015, Eswick called Ms. Sowemimo into a meeting and told her she was being demoted to IT portfolio manager.

38. Ms. Sowemimo followed up with Eswick by email to ask if she was being terminated, to which Eswick responded "[a]bsolutely not. You're not being let go."

39. On or about September 1, 2015, Ms. Coulson requested a list of Ms. Sowemimo's duties.

40. On information and belief, Ms. Coulson requested a list of duties at Douglas and Eswick's request so that they could hire a non-disabled individual instead of her.

41. Ms. Sowemimo sent a list of her duties on September 2, 2015.

42. Ms. Sowemimio underwent surgery on August 5, 2015.

43. On August 14, 2015, her doctor sent TWD a letter indicating that she could return to work on light duty on August 18, 2015.

44. Ms. Sowemimo continued wearing the heart monitor to work after she returned to work.

45. After Ms. Sowemimo returned to work, she continued suffering from chest pain, and visited the emergency room on August 21, 2015.

46. Ms. Sowemimo continued follow-up appointments, including visiting the doctor on September 11, 2015.

47. Ms. Sowemimo informed TWD that she needed to go to the doctor on September 11, 2015 for a follow-up about her heart problems.

48. When Ms. Sowemimo returned to work on September 14, 2015, she was called into a meeting with Eswick and a human resources representative.

49. In the meeting, Eswick presented her with a termination letter setting her last day of employment as September 15, 2015.

50. In the meeting, Eswick instructed Ms. Sowemimo that she was being let go because her position was no longer necessary.

51. Douglas instructed Ms. Sowemimo not to return to work on September 15, 2015.

52. After she received the letter, Douglas escorted Ms. Sowemimo to her desk to gather her belongings and escorted her from the building.

53. Douglas informed Ms. Sowemimo she was not permitted to check her desktop or remove any files, including any personal files.

54. On information and belief, Douglas instructed Ms. Sowemimo she was not permitted to use her computer to prevent her from preserving evidence related to her TWD's handling of her disability.

55. After she was terminated, TWD hired three more individuals to handle IT portfolio manager duties supporting the NAVSEA contract.

56. On information and belief, none of those individuals were disabled.

57. On September 15, 2015, Ms. Sowemimo filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on disability.

58. Ms. Sowemimo received the Notice of Right issued by the EEOC July 22, 2017.

59. This action is timely filed within ninety days of receipt of Plaintiff's Notice of Right to Sue.

## COUNT I
### Discrimination in Violation of the Americans With Disabilities Act

60. Plaintiff re-alleges and reasserts each and every allegation set forth above, as if each were set forth herein.

61. Defendant chose to demote and terminate Ms. Sowemimo's employment because Ms. Sowemimo suffered from a disability, and for reasons arising from discrimination against Ms. Sowemimo on account of that disability.

62. Ms. Sowemimo was never informed of any performance deficiencies and at all times maintained a good relationship with the government client.

63. Ms. Sowemimo made a request for reasonable accommodation in the form of time off for surgery and doctors' appointments.

64. As a result of Ms. Sowemimo's disability and in response to Ms. Sowemimo's requests, Defendant punished Ms. Sowemimo by demoting and terminating her.

65. Defendant's failure to accommodate Ms. Sowemimo and for taking adverse action against her as a result of learning about her disability constituted a violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (including 12117, which cross-references the jurisdictional provisions of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3)).

66. This conduct by Defendant was actuated by malice, spite, and ill-will; was willful and wanton, and evinced conscious disregard for the rights of Ms. Sowemimo.

67. As a direct and proximate result of Defendant's actions, Ms. Sowemimo has suffered emotional distress and economic injury. Such injury includes inconvenience, mental anguish, embarrassment, humiliation, anxiety, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

68. Due to the severity of Defendant's conduct, Ms. Sowemimo is also entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

1. Grant judgment in favor of Plaintiff against Defendant under Count I, with compensatory damages, punitive damages, plus interest (pre- and post-judgment) to Plaintiff, in an amount to be determined at trial;

2. Grant Plaintiff such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 19, 2017                                     Respectfully submitted,

/s/
_____
Joshua Erlich, DC Bar No. 1011008
Katherine Herrmann, DC Bar No. 1034189
The Erlich Law Office, PLLC
2111 Wilson Blvd.
Suite 700
Arlington, VA  22201
Tel:    (703) 791-9087
Fax:   (703) 351-9292
Email: jerlich@erlichlawoffice.com
          kherrmann@erlichlawoffice.com

*Counsel for Plaintiff*

8